FILED
2021 Mar-18 PM 01:25
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

BARRY KEITH WOODARD,          )
                              )
         Plaintiff,           )
                              )
    v.                        )          1:18-cv-00533-LSC
                              )
ANDREW SAUL,                  )
Commissioner of               )
Social Security,              )
                              )
         Defendant.           )

**MEMORANDUM OF OPINION**

## I.    Introduction

The plaintiff, Barry Keith Woodard, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI"). Plaintiff timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. § 1383(c)(3).

Plaintiff was fifty-two years old at the time of his supplemental hearing on October 20, 2016. (Tr. at 694.) The Administrative Law Judge's ("ALJ's") second unfavorable decision was issued on January 12, 2017. (Tr. at 366.) Plaintiff has a General Education Degree ("GED"), and his past work experiences include a

machine shop production worker, forklift operator, and cable installer. (Tr. at 350, 698-700.) Plaintiff claims that he has been unable to engage in substantial gainful activity since April 7, 2011, due to a combination of impairments, including degenerative disc disease of the lumbar spine, history of osteoarthritis of the left hip, history of post-traumatic stress disorder ("PTSD"), generalized anxiety disorder, and avoidant personality disorder. (Tr. at 692.) Plaintiff testified that he has been unable to work due to pain in his hip, neck, and back. (Tr. at 707.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The ALJ will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the ALJ to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the ALJ moves on to the next step.

The second step requires the ALJ to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of

impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the ALJ to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the ALJ will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the ALJ must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the ALJ to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.*

§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).   If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the ALJ will make a finding of not disabled.   *See id.*

The fifth and final step requires the ALJ to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work.   *See id.*  §§ 404. 1520(a)(4)(v), 416. 920(a)(4)(v).   If the plaintiff can perform other work, the ALJ will find him not disabled.  *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g).  If the plaintiff cannot perform other work, the evaluator will find him disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ first found that Plaintiff has not engaged in SGA since April 7, 2011, the application date.  (Tr. at 371, 692.) According to the ALJ, Plaintiff has the following severe impairments: major depressive disorder, recurrent (in partial remission); PTSD; avoidant personality disorder; alcohol abuse, in remission; and obesity.  (20 C.F.R. § 416.920(c)) (Tr. at 371.)  These impairments are considered "severe" based on the requirements set forth in the regulations.  *Id.*  However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. at 372.)  The ALJ determined that Plaintiff has the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b).  The undersigned finds, however, that the full range of light work that could be performed by the claimant is reduced by the following functional limitations: the claimant can frequently climb ramps and stairs but never climb ladders or scaffolds.  He can frequently stoop, crouch, kneel, and crawl.  The claimant should never be exposed to unprotected heights or operate commercial motor vehicles.  The undersigned further finds that the claimant could only remember short simple instructions and would be unable to deal with detailed or complex instructions.  He could do simple routine repetitive tasks but would be unable to do  detailed   or complex tasks.  He would be limited to making simple work-related decisions.  The claimant should have no interaction with the general public but could have occasional interaction with co-workers and frequent interaction with supervisors.  He would be able to accept constructive non-confrontation criticism, work in small group settings and be able to accept changes in the workplace setting if introduced gradually and infrequently.  He would be unable to perform assembly line work with production rate pace but could perform other goal-oriented work.  In addition to normal workday breaks, he would be off-task 5% of an 8-hour workday (non-consecutive minutes).

(Tr. at 373.)

Next, the ALJ determined at step four of the sequential evaluation process that Plaintiff could not return to his past relevant work as a forklift operator, drill press operator, hydraulic press operator, or cable installer.  (Tr. at 379.)  During the supplemental hearing on October 20, 2016, a Vocational Expert ("VE") testified that this type of work requires the performance of medium-exertional and semi-skilled work-related activities, which are precluded by Plaintiff's RFC.  (Tr. at 722.)  However, based on hypothetical situations presented to the VE at the supplemental

hearing, the ALJ determined that Plaintiff would be able to perform jobs such as cleaner, sorter, and assembler. (Tr. at 380.) Therefore, the ALJ found that Plaintiff does not have a "disability" as defined in the Social Security Act because even though Plaintiff cannot return to his previous jobs, the Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. *Id.*

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir.

2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.    Discussion

Plaintiff argues that the ALJ's decision should be reversed and benefits awarded, or, in the alternative, that this case should be remanded because the ALJ erred in evaluating the opinions of five one-time consultative doctors: Dr. Anthony

Fava; Dr. Ammar Aldaher; Dr. Robert Storjohann; Dr. Christopher Randolph; and Dr. Velda Pugh.

The ALJ must articulate the weight given to each of the medical opinions in the record and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source shared with the claimant, the relevance of the evidence the medical source gives to support the opinion, the consistency of the opinion with the record as a whole, and the specialization of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

The classification of acceptable medical sources encompasses several types of sources that are entitled to varying weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is "a physician,

psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case... includ[ing] State agency medical and psychological consultants..."  20 C.F.R. § 404.1502.

The regulations and case law set forth a general preference for treating medical sources' opinions over those of non-treating medical sources, and non-treating medical sources over non-examining medical sources.  *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985).  Thus, a treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (internal quotations omitted)). However, the opinion of a one-time consultative examiner is not entitled to any special deference.  *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *see also Denome v. Comm'r Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (holding that the ALJ does not have to defer to the opinion of a doctor who conducted a single examination and who was not the treating source).  In short, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

The Court must also be aware of the fact that opinions such as determinations of a claimant's disability, the claimant's RFC, and the application of vocational factors "are not medical opinions… but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1546(c).

## A. The Physical Consultative Examinations

The record contains opinions from Dr. Fava and Dr. Aldaher, two physical consultative examiners. (Tr. at 294-96, 643-53.) Dr. Fava conducted a consultative examination on May 31, 2011, in which he addressed Plaintiff's physical impairments and how these limitations affect his ability to perform certain job functions. (Tr. at 294-96.) During the examination, Dr. Fava found that Plaintiff was able to get on and off the examination table with no difficulty, ambulate normally without the use of an assistive device, and was able to heel and toe walk. (Tr. at 295.) Dr. Fava did

note that Plaintiff was unable to squat and rise.  (*Id.*)  Dr. Fava also noted that Plaintiff's range of motion in his back was normal, and there were no spasms or deformities.  (*Id.*)  Dr. Fava found that Plaintiff's range of motion in his neck was mildly limited, but otherwise there were no spasms, thyromegaly, JVD, or bruits. (*Id.*)  In evaluating Plaintiff's muscle strength, Dr. Fava found that Plaintiff's major muscle groups had no abnormalities, and that Plaintiff's sensation was normal to pinprick and vibration.  (*Id.*)  Dr. Fava noted that Plaintiff's dexterity and grip strength in both of his hands and fingers was normal.  (Tr. at 298.)  Dr. Fava opined that Plaintiff could perform the following work-related activities: sitting, standing, and walking for less than twenty minutes, and lifting, carrying, and handling objects weighing less than three pounds.  (Tr. at 296.)  Dr. Fava also opined that Plaintiff would be unable to travel.  (*Id.*)

Dr. Aldaher examined Plaintiff on August 18, 2016, over five years after Dr. Fava's examination.  (Tr. at 644-51.)  Dr. Aldaher noted that Plaintiff had a normal gait and that he did not use any assistive devices to walk.  (Tr. at 645.)  Dr. Aldaher found that Plaintiff had full range of motion in his back and there were no spasms or deformities.  (*Id.*)  Dr. Aldaher found that Plaintiff's range of motion in his neck revealed no abnormality and no spasms, thyromegaly, JVD, or bruits.  (*Id.*)   Dr. Aldaher noted that Plaintiff had no muscle weakness, intact sensation to pinprick and

vibration, normal reflexes, and a normal grip. (*Id.*) Dr. Aldaher opined that Plaintiff would frequently be able to carry and lift up to fifty pounds and could occasionally carry and lift up to one hundred pounds. (Tr. at 646.) Dr. Aldaher also opined that Plaintiff would be able to sit, stand, and walk up to five hours at one time without interruption. (*Id.*) He also opined that Plaintiff would frequently be able to climb stairs and ramps, climb ladders and scaffolds, balance, stoop, kneel, crouch, and crawl. (Tr. at 649.)

Dr. Fava and Dr. Aldaher had similar observations during their examinations of Plaintiff, but they had conflicting opinions. Dr. Fava opined that Plaintiff would only be able to sit, stand, and walk for less than twenty minutes, while Dr. Aldaher found that Plaintiff would be able to sit, stand, and walk up to five hours at one time without interruption. The ALJ properly weighed the conflicting opinion evidence by giving little weight to Dr. Fava's opinion and substantial weight to Dr. Aldaher's opinion. (Tr. at 378.) *See White v. Comm'r of Soc. Sec. Admin.*, Case No. 4:16-cv-00248-JHE, 2017 WL 4246895, at *6 (N.D. Ala. Sept. 25, 2017) ("As the fact-finder, the ALJ has the duty to weigh the evidence of record, including the task to examine the evidence and resolve conflicting reports.") (citing *Wolfe v. Chater*, 86 F.3d, 1072, 1076 (11th Cir. 2006)). The ALJ gave little weight to Dr. Fava's opinion because it

was inconsistent with the longitudinal evidence presented and the doctor's own observations. (Tr. at 378.)

Substantial evidence supports the ALJ's decision to give little weight to Dr. Fava's opinion. Dr. Fava's findings that Plaintiff was only able to sit, stand, or walk for less than twenty minutes were inconsistent with his physical findings, which consisted of a mildly restricted range of motion in Plaintiff's neck but an otherwise normal gait, muscular strength, and sensory responses. (Tr. at 295.) Dr. Fava's findings were also inconsistent with the longitudinal evidence. For example, Plaintiff visited Dr. Michael Vaughn twice, on June 15, 2011 and July 5, 2011, after the consultative physical examination with Dr. Fava. Dr. Vaughn opined that Plaintiff had a normal gait, some lower back pain with squatting, and muscle strength rated 5 out of 5. (Tr. at 333.) Dr. Vaughn also noted on July 5, 2011, that he advised Plaintiff his lower back pain had, at most, degenerative joint disease ("DJD") and that Plaintiff needed to do core muscle strengthening exercises. (Tr. 337.) During this visit, Dr. Vaughn also examined X-Rays of Plaintiff's back and he opined that they looked "normal." (Tr. at 335.) Additionally, Dr. Fava's opinion suggesting severe mobility limitations directly contradicted his own examination notes, which show that Plaintiff had a normal sensor, gait, reflexes, and muscle strength. (Tr. at 278, 281, 333.) Although Dr. Fava's observation of Plaintiff's inability to squat and rise

was partially consistent with the record's notation of "some LBP [lower back pain] with squatting," this abnormality does not justify the severe limitations on mobility that Dr. Fava found.  (Tr. at 278, 281, 333, 336-37, 645.)  Because Dr. Fava's opinion expressing notable physical limitations is inconsistent with the record and his own findings of few physical impairments, the ALJ properly gave the opinion little weight. *See* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight [an ALJ] will give to that medical opinion.").

Second, the ALJ also discounted the weight of Dr. Fava's opinion because he did not give an explanation as to why Plaintiff could not travel, lift more than three pounds, or sit or stand for more than twenty minutes.  (Tr. at 296.)  *See* 20 C.F.R. § 416. 927(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight [the ALJ] will give that medical opinion.")  Dr. Fava's opinion that Plaintiff had great functional limitations was supported by nothing more than Plaintiff's subjective complaints regarding his chronic low back and hip pain.  (Tr. at 294.)  *See Markuske v. Comm'r of Soc. Sec.*, 572 F. App'x 762, 765-66 (11th Cir. 2014) (affirming ALJ's decision to give little weight to physician's opinion that was based on the claimant's subjective complaints because the degree of restrictions was not supported by record evidence); *see also Crawford,* 363 F.3d at 1159-60 (opinion not

entitled to deference where the opinion was based on subjective complaints). Accordingly, the ALJ's decision to discount Dr. Fava's opinion is supported by substantial evidence.

Next, substantial evidence supports the ALJ's decision to give Dr. Aldaher's opinion substantial weight, as his findings are internally consistent and consistent with other medical evidence in the record. For example, Dr. Aldaher's conclusion that Plaintiff could perform medium exertional work, such as his ability to lift up to fifty pounds frequently and his ability to sit, stand, or walk for five hours per day, was consistent with his examination findings that Plaintiff had normal range of motion in his neck and back and a normal gait, sensation, and reflexes. (Tr. at 645-47.) *See* C.F.R. § 404.1527(c)(3) (greater weight will be assigned to medical opinions that present relevant evidence to support a medical opinion, particularly medical signs and laboratory findings). Dr. Aldaher's opinion was consistent the longitudinal medical evidence and opinions of two other doctors: Dr. Charles Ogles and Dr. Michael Vaughn. Plaintiff saw Dr. Ogles on May 19, 2010 and June 10, 2010. (Tr. at 275, 279.) Although Plaintiff told Dr. Ogles his visit was primarily for his lower back pain, Plaintiff denied muscle cramps, joint pain, joint swelling, back pain, muscle weakness, and loss of strength during both visits. (Tr. at 276, 280.) As discussed above, Plaintiff saw Dr. Vaughn twice in 2011. (Tr. at 333, 335.) During

both visits Dr. Vaughn reported that Plaintiff had a normal gait and 5/5 muscle strength.  (Tr. at 333, 336.)  Since Dr. Aldaher's opinion was consistent with his own examination as well as two other examining doctor's opinions, the ALJ did not err in giving substantial weight to Dr. Aldaher's opinion.

**B.  The Psychological and Psychiatric Consultative Examinations**

The record contains two psychological consultative opinions by Drs. Storjohann and Randolph and a psychiatric consultative opinion from Dr. Pugh, and a non-examining state psychological consultative opinion by Dr. Estock.  (Tr. at 300-04, 346-52, 637-42, 313-29.)

Dr. Storjohann conducted an examination on June 22, 2011, in which he observed that Plaintiff was severely depressed and anxious but noted that his memory was intact, he had coherent thoughts, and made acceptable work decisions. (Tr. at 303-04.)  Dr. Storjohann concluded that Plaintiff appeared to have mild to moderate deficits in his ability to understand and carry out tasks in a work setting. (*Id*.)  He also noted marked deficits in his ability to respond to social interactions with supervisors and coworkers and difficulty in handling work pressures.  (*Id*.)

Dr. Randolph's examination occurred August 15, 2012, and he observed that Plaintiff had moderate impairments in understanding and carrying out simple instructions and making judgments on simple work-related decisions.  (Tr. at 347.)

However, Dr. Randolph found that Plaintiff had extreme deficits in understanding and carrying out complex instructions, making judgments on complex work-related decisions, and interacting and responding appropriately to the public, coworkers, and work situations. (Tr. at 347-48.) Dr. Randolph concluded that due to symptoms of PTSD and social avoidance, Plaintiff was disabled and could not work, even though he found that his effort and motivation were good. (Tr. at 352.)

Dr. Estock reviewed Dr. Storjohann's examination from June 2011 and determined that Plaintiff had mild restrictions in performing daily activities and maintaining concentration, as well as a moderate limitation in maintaining social functioning. (Tr. at 323.) He found that Plaintiff only had marked deficits in his ability to get along with coworkers without distracting them. (Tr. at 328.) Dr. Estock concluded that Plaintiff could remember and carry out simple tasks but stated that he should not frequently socialize with the public and coworkers. (Tr. at 329.)

Dr. Pugh's examination was more recent, occurring on August 6, 2016. (Tr. at 638.) She observed that Plaintiff was alert, cooperative, had no impairments in memory or understanding, and had an appropriate affect. (Tr. at 639.) Dr. Pugh found that Plaintiff's impairments did not affect his ability to understand, remember, or carry out instructions, nor did it affect his ability to interact with the public or people in a work setting. (Tr. at 640-41.)

The ALJ gave the most weight to Dr. Pugh's opinion, while giving partial weight to the opinions of Drs. Storjohann and Estock, and no weight to Dr. Randolph's opinion. (Tr. at 378.)

First, substantial evidence supports the ALJ's decision to give great weight to the opinion of Dr. Pugh. The ALJ assigned the most weight to Dr. Pugh's opinion because it was internally consistent. (Tr. at 378.) For example, Dr. Pugh's observations that Plaintiff was cooperative and coherent with an appropriate affect align with her conclusions that Plaintiff's depression and PTSD did not affect his ability to undertake tasks or his ability to interact socially with others. (Tr. at 640-41.) Additionally, Dr. Pugh's specialization in psychiatry led the ALJ to assign more weight to her opinion. (Tr. at 378.) *See* 20 C.F.R. §§ 404.1527(d), 416.927(d) (the weight afforded to a medical opinion depends upon several factors, including the specialty of the medical source). Even though the ALJ gave the most weight to Dr. Pugh's opinion, he still gave a far more limiting RFC based on the record as a whole, including the opinions of Drs. Storjohann and Estock. (Tr. at 373.)

Next, the ALJ assigned only partial weight to the opinions of Dr. Storjohann and Dr. Estock. (Tr. at 378.) Substantial evidence supports this decision. The ALJ assigned partial weight to the opinion of Dr. Storjohann because his opinion was not internally consistent. (*Id.*) In Dr. Storjohann's conclusions, he noted that Plaintiff

had mild to moderate deficits in his ability to understand, carry out, and remember instructions pertaining to work, and noted marked deficits in Plaintiff's ability to respond appropriately to coworkers and work pressures. (Tr. at 304.) However, Dr. Storjohann's opinion of marked social functioning limitations directly contradicts his observation that Plaintiff was cooperative during the examination. (Tr. at 304.)

The ALJ assigned partial weight to Dr. Estock's opinion because he did not have the opportunity to review the most recent medical records, but the ALJ still found that his opinion was consistent with the record. (Tr. at 378.) The ALJ's assignment of partial weight to Dr. Estock aligns with the Eleventh Circuit's precedent regarding state agency consultants who have not reviewed the entire record. *See Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) (holding that the ALJ did not unduly rely upon the opinion of the non-examining doctor because she did not unconditionally adopt the doctor's opinion and because the ALJ cited several other portions of the record to support her conclusions). Here, the ALJ recognized that Dr. Estock had only reviewed outdated portions of the medical record, so the ALJ appropriately assigned only partial weight to Dr. Estock's opinion, acknowledging that it is generally consistent with the record. (Tr. at 378.)

Finally, the ALJ gave no weight to the opinion of Dr. Randolph, as it was internally inconsistent, relied too heavily upon Plaintiff's subjective reports, and the

doctor made a determination regarding Plaintiff's ability to obtain gainful employment, an opinion which is specifically reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e), 416.927(d). Substantial evidence supports this decision. For example, Dr. Randolph's finding of marked social limitations is inconsistent with his observation that Plaintiff maintained good eye contact. (Tr. at 351.) Additionally, although Dr. Randolph did not note any outward manifestations indicating extreme limitations with socializing during the examination, Dr. Randolph still found extreme limitations based on Plaintiff's self-reports of social avoidance. (*Id.*) Thus, the extreme limitations that Dr. Randolph found were not based on his objective examination of the patient but based on Plaintiff's subjective allegations given before the examination. The ALJ found that Plaintiff's subjective allegations were not consistent with the record, as Plaintiff had admitted he had been able to interact with others through social media, frequently spent time with his girlfriend, and shopped in small stores interacting with people he knows. (Tr. at 714-18.) *See Markuske v. Comm'r of Soc. Sec.*, 572 F. App'x 762, 765-66 (11th Cir. 2014) (affirming the ALJ's decision to give little weight to physician's opinion that was based on the plaintiff's subjective complaints because the degree of restrictions was not supported by the record); *see also Crawford,* 363 F.3d at 1159-60 (medical opinion not entitled to deference where the opinion was based on plaintiff's subjective complaints).

Another reason the ALJ rejected the extreme and marked social functioning limitations was because Plaintiff's mental health and social functioning improved with treatment.  (Tr. at 376-77.)  Indeed, after Plaintiff received mental health treatment, he said his mental health was good and he exhibited mostly euthymic mood and appropriate affect.  (Tr. at 672, 674, 681-82, 684-85.)  He told his counselor he had new friends and that those friends had made a difference in his life. (Tr. at 674.)  Plaintiff also told the ALJ that he had reconnected with friends over Facebook and had gone to his high school reunion.  (Tr. 715-16.)  The ALJ considered the treatment records and hearing testimony and found that Plaintiff had no more than mild social functioning limitations.  Therefore, based on this evidence, the ALJ gave little weight to the extreme social functioning limitations opined by Dr. Storjohann and Dr. Randolph.  (Tr. at 377-78.)

## IV.   Conclusion

Upon review of the administrative record, and considering all of Plaintiff's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  A separate order will be entered.

**DONE** and **ORDERED** on March 18, 2021.

_____
L. Scott Coogler
United States District Judge

160704